## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PAINTERS DISTRICT COUNCIL NO. 14, )
a labor organization,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
DESTINY DECORATORS, INC., an　　　)
Illinois corporation,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　)

```
FILED: SEPTEMBER 2, 2008
No.   08CV4984
      JUDGE MORAN
Judge MAGISTRATE JUDGE KEYS
      EDA
Magistrate Judge
```

## COMPLAINT

Plaintiffs, PAINTERS' DISTRICT COUNCIL NO. 14, a labor organization, by its attorneys,

Donald D. Schwartz, James R. Anderson, Anthony B. Sanders and ARNOLD AND KADJAN,

complain against Defendant, Destiny Decorators, Inc., an Illinois corporation, as follows:

## COUNT I

### (Enforcement of Arbitration Award)

Jurisdiction and Venue

1.　　　Jurisdiction of this action is founded upon Section 301 of the Labor-Management

Relations Act, 29 U.S.C. Section 185(c), as amended, and which presents a federal question

pursuant to 28 U.S.C. Section 1331.

2.　　　Venue is founded in this District pursuant to 29 U.S.C. Section 185(a) and

because it is the district in which the Defendant resides.

## The Parties

3.       Plaintiff, PAINTERS' DISTRICT COUNCIL NO. 14, ("PDC 14" or the "Union"), a labor organization, has standing to bring this action pursuant to 29 U.S.C. Section 185(a).

4.       Defendant Destiny Decorators, Inc. (**"Destiny"**), an Illinois corporation, is an employer engaged in an industry affecting commerce which on or about September 4, 2002 entered into a Memorandum of Agreement ("Labor Agreement") with the Union whereby **Destiny** agreed to be bound by the provisions of the Labor Agreement, Area Wide Collective Bargaining Agreement ("CBA") and any subsequent agreements negotiated between the Union and certain employer associations.  True copies of the Labor Agreement and applicable section of the CBA are attached hereto as Exhibits 1 and 2, respectively.

## The Agreements

5.       Pursuant to the terms of the CBA, all disputes or grievances arising out of working conditions and operations shall be submitted to a Joint Trade Board (the "Board"), consisting of employer and PDC No. 14 representatives, convened pursuant to notice, to be resolved at a hearing of the Board.  See Exhibit 2, Article XVI of the CBA for the period June 1, 2003 through May 31, 2008.

## The Claim

6.       On December 21, 2007, pursuant to notice, PDC 14 brought charges against **Destiny**.  Charges were mailed to **Destiny** and its attorneys via certified mail.  A copy of the notice and receipts of service are attached as Exhibit 3.

7.       On January 16, 2008, the Joint Trade Board convened for hearing of the dispute. The Board, in response to the request of **Destiny's** counsel, continued to the hearing to January

30, 2008.  Testimony was taken and evidence entered on January 30, 2008, and the hearing was continued to February 20, 2008 and concluded.  Subsequently, on May 15, 2008, the Board decided the dispute in favor of the Union and against **Destiny**.  See copy of Notice of Decision and Award and Decision and Award ("Award"), attached hereto as Exhibit 4.

8.      Copies of the Award were served on Destiny via certified and regular mail, and were received by **Destiny** on May 23, 2008, and by its counsel on May 28, 2008.  See copies of receipts of service attached as Exhibit 5, and Notice of Decision and Award, Exhibit 4.

9.      The Board issued fines and awards of back-pay of a certain level if the amounts were paid on or before June 30, 2008.  If the amounts were not paid on or before June 30, 2008, the fines and back-pay was set at higher amounts.  The amounts of the fines and back-pay if payment was not made on or before June 30, 2008 are: $10,000.00 in gross wages to former **Destiny** employee Herman Rogers, $10,000.00 in gross wages to former **Destiny** employee Charles Jackson, and $10,000.00 in gross wages to former **Destiny** employee David Johnson for violations of Article V, Section 1 of the CBA; $15,000.00 in fines for violations of Article V, Section 1 of the CBA; $400.00 in fines for violations of Article X, Section 4 of the CBA; and $5,000.00 in fines for violations of Article XI, Section 1 and/or Article V, Section 1(a) of the CBA.  These amounts total $49,400.00.

10.      **Destiny** made no payment toward the amounts in the Award on or before June 30, 2008, and has made no payment toward the amounts in the Award since June 30, 2008.  **Destiny** has therefore not complied with the provisions of the Board's Award.

11.      More than 90 days have passed since service of the Award.

12.      The Board's decision is final and binding upon the parties, as provided by Article XVI, Section 3 of the CBA.  **Destiny** has not taken any action to set aside the Board's award and

the time to take such action—90 days—has passed. *Sullivan v. Lemoncello*, 36 F.3d 676, 681-82 (1996).


       **WHEREFORE**, Plaintiff, PAINTERS' DISTRICT COUNCIL NO. 14 prays that this Court enter relief as follows:

       A.     Enforce the Board's Decision and Award by entering judgment in favor of Plaintiff and against **Destiny Decorators, Inc.** in the amount of **$49,400.00**, plus attorneys' fees and costs, as provided by the Award and the CBA.

       B.     This Court grant Plaintiff such other and further relief as it may deem appropriate under the circumstances.


                Respectfully submitted,

                **PAINTERS' DISTRICT COUNCIL NO. 14**


                By:  /s/ Anthony B. Sanders
                      One of their Attorneys


DONALD D. SCHWARTZ
JAMES R. ANDERSON
ANTHONY B. SANDERS
ARNOLD AND KADJAN
19 West Jackson Blvd.
Chicago, Illinois 60604
(312) 236-0415

08CV4984
JUDGE MORAN
MAGISTRATE JUDGE KEYS
EDA

# Exhibit 1

SEP 01 '04 10:27 FR PAINTERS D.C. #14      3124217884 TO ARNOLD              P.04/13

## PAINTERS' DISTRICT COUNCIL #14
## (MEMORANDUM OF PAINTING AGREEMENT)

THIS AGREEMENT entered into by Painters' District Council #14 (hereinafter referred to as "The Union" and _DESTINY DECORATORS INC._ referred to as "the Employer", Witnesseth That:

WHEREAS, the PAINTING AND DECORATING CONTRACTORS; ASSOCIATION, (hereinafter "ASSOCIATION") and the UNION have reached agreement on Wages, Hours and terms and conditions of employment for the period of June 1, 1997 to May 31, 2004.

WHEREAS, the parties to this agreement wish to promote continued employment in the Industry, prevents interruption of work and agree to adopt such terms:

NOW, THEREFORE, IT IS AGREED AS FOLLOWS:

1. The Employer hereby recognizes the Union as the sole and exclusive bargaining representative of all Employer's employees performing work within the craft and geographic jurisdiction of the Union as the same exists as of the date hereof and including any such additional work or geographic area over which the Union may hereafter acquire jurisdiction with respects to Wages, Hours, and other terms and conditions of employment.

The Employer, in response to the Union's claim that it represents an uncoerced majority of each employer's Painting employees, has been authorized to and in fact does represent such majority of such employees in accordance with Section 9 of the Labor Relations Act without the need for a Board Certified Election.

2. The Employer acknowledges that he is bound to all terms and conditions of The Collective Bargaining Agreement between the Union and the Associations as applicable to him which expired at 12:00 midnight, May 31, 1997, and hereby reaffirms his continuing obligations with respect to all such provisions, acknowledges the renewal of all such provisions to the extent the same are no inconsistent with the provisions of the Agreement, and hereby agrees to the changes in the Agreement between and the Union and the Association and all subsequent amendments thereto and to any other changes subsequently negotiated by and between the Union and the applicable Association. Said Contracts are specifically incorporated by reference and made a part hereof.

3. The Collective Bargaining Agreement between the Union and Association, June 1, 1997, to May 31, 2004, and all subsequent amendments thereto are incorporated herein as if they were forth in full. The Employer agrees to be bound by the terms of the applicable Association Bargaining Agreement for the life of the negotiated Agreement.

4. The Employer agrees to pay the amount it is bound to pay under the Collective Bargaining Agreements to the Pension, Welfare, Apprentice and Savings Funds and to become bound by and considered a party to the Agreements and Declarations of Trust creating such trust funds and such declarations are incorporated by reference herein. Said amounts are:

CHANGES EFFECTIVE June 1, 2002 through May 31, 2003

| NEW PAINTING CONTRACT | TOTAL | PER HOUR $1.75 | |
|---|---|---|---|
| Wages | $29.85 | 1.25 | Increase |
| Welfare Fund | $4.30 | .30 | Increase |
| Pension Fund | $4.30 | .10 | Increase |
| Savings | .75 | (Deducted from Wages) | |
| Joint Cooperation | .01 | No | Increase |
| Education & Scholarship | .03 | No | Increase |
| Industrial Advancement | .06 | No | Increase |
| JATC | .44 | .10 | Increase |





SEP 01 '04 10:28 FR PAINTERS D.C. #14    3124217884 TO ARNOLD    P.05/13

5. This Agreement shall become effective at 12:00 A.M., June 1, 1997, and shall remain in full force and effect until 12:00 P.M., May 31, 2004, or continue thereafter unless there has been given not less than sixty (60) days, nor more than ninety (90) days written notice by Registered or Certified Mail, prior to expiration by either party hereto to the desire to modify, amend or terminate this agreement through negotiations. The absence of such notice will result in the automatic renewal of this Agreement for the life of the newly negotiated area wide Agreements between the Union and the Association with all improvements, modifications and amendments thereto and incorporating them herein.

6. This document is the complete written agreement between the parties and can only be amended in writing by their parties. No other oral representations shall be binding on either party nor shall any party rely upon such oral statements that vary their terms of the written contract.

7. The employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The Employer further acknowledges receipt of a copy of the complete Joint Working Agreement.

IN WITNESS WHEROF, and in consideration of the mutual promise of the parties hereto, and other good valuable consideration, this Agreement was entered into this _4rh_ day of _September_, 200_2_.

EMPLOYER:

FIRM: _Destiny Realtors + Decorators_
(PRINT)

ADDRESS: _P.O. Box 289161_
(PRINT)

NAME & TITLE _Daniel McDuffie_
(PRINT)

SIGNATURE _____

_____
Gerald C. Harms
Business Manager/Secretary-Treasurer
Painters' District Council #14

(A38)

08CV4984
JUDGE MORAN
MAGISTRATE JUDGE KEYS
EDA

Exhibit 2

June 1, 2003 through May 31, 2008

A G R E E M E N T

between

PAINTING AND DECORATING CONTRACTORS ASSOCIATION, CHICAGO COUNCIL

and

PAINTERS' DISTRICT COUNCIL NO. 14
OF THE INTERNATIONAL UNION
OF PAINTERS AND ALLIED TRADES

(of Chicago, Cook, Lake, Will and Grundy Counties, Illinois)

April 24, 2003

(b) (4). Any Employer commencing work in violation of the requirements set forth above shall be in violation of this Fringe Benefit Fund contribution payment provision of this Agreement.

**Section 2.   Unemployment Compensation Act Coverage.**  It is agreed that all Employers not otherwise required by pay contributions under the Illinois Unemployment Compensation Act, and regardless of the number of men employed, shall voluntarily elect to become subject thereto and liable for the payment of contributions thereunder.

**Section 3.   Wage and Withholding Statements.**  On each payday, the Employer shall deliver to Employees a statement showing the amount withheld for taxes, amount deducted for Deferred Savings Plan, and total hours worked, both regular and overtime.

**Section 4. Fringe Benefit Stamp.**  Employees' pay checks issued by members of the Association shall bear the following stamp: "Welfare Fund and Pension Fund contributions are being paid for you for this pay period."

## ARTICLE XVI

## JOINT TRADE BOARD

**Section 1.   Designation of Members - - Board Rules.** (a)  The parties hereto agree that, during the term of this Agreement, there shall be a standing Joint Trade Board composed of four (4) representatives designated by the Association and four (4) representatives designated by the Union, one of whom shall be elected as Chairman and one of whom shall be elected as Secretary of said Board.  In order to assure equal Employer and Union representation at all times, it is agreed that whenever a vacancy exists and whenever a member of the Joint Trade Board is absent from a meeting, if such vacancy or absence results from a lack of a Union representative or representatives, the vote or votes represented by such vacancy or absence shall be divided equally among the remaining Union representatives, each of whom shall be entitled to vote the whole or fractional vote or votes allocated to him as a result of such division, in addition to his own vote, until such vacancy is filled or such absence terminates. If such vacancy or absence results from a lack of an Employer representative or representatives, the vote or votes represented by each vacancy or absence shall be divided equally among the remaining Employer representatives, each of whom shall be entitled to vote the whole or fractional vote or votes allocated to him as a result of such division, in addition to his own vote, until such vacancy is filled or such absence terminates.

(b)  The Joint Trade Board shall have the right to set up its own rules and regulations providing ways and means of enforcing and adjudicating this Agreement and any Employer who has signed an Agreement with the Union agrees to be bound by the decisions of the Joint Trade Board.  Such rules and regulations are to be published in booklet form for distribution to the parties under this Agreement.

**Section 2.   Jurisdiction.** (a)  To the Joint Trade Board shall be referred all disputes and matters of controversy arising under the provisions of this Agreement.

(b) Any party to this Agreement may, by appeal from the decision of either party hereto, request a hearing of the matter in dispute by the Joint Trade Board, and such Joint Trade Board shall thereupon proceed to hearing and decision of such matter.

(c) If the Joint Trade Board finds that an Employer who is bound by this Collective Bargaining Agreement or Employers who have signed an agreement with the Union agreeing to be bound by the decisions and rules of the Joint Trade Board is in violation of ~~their~~ agreement, the Joint Trade Board is authorized to issue an award of actual damages, plus fines, and assess liquidated damages which shall include interest, costs, attorneys' fees, administrative expenses, auditing or accountants' fees, research, investigation, and stenographic expenses in the event of a transcript in obtaining or enforcing the award. Said fines shall be paid to the Cooperation Trust Fund. In the event of a deadlock of the members of the Joint Trade Board, all matters in dispute shall be referred to an arbitrator selected by a majority of the Joint Trade Board.

**Section 3.  Board Decision Final and Binding.** The Joint Trade Board, by a majority vote of all of its members, may decide matters of disputes submitted hereunder which involve the interpretation, application, or adherence to the terms of this Agreement, with the exception of matters arising under Articles VI, VII, VIII, and XIII hereof. Such decision and the remedy set by the Board shall be binding and final on the parties to such matter or dispute.

**Section 4.  Hearing Expenses.** In all hearings conducted by the Joint Trade Board, the necessary expenses incidental thereto pertaining to investigations, research work, court reporter, or other stenographical services, transcript of testimony, if required, and all other expenses thereto, shall be paid by the party requesting the hearing; and if the Joint Trade Board request, the estimated costs thereof must be paid in advance of the hearing.

## ARTICLE XVII

## COOPERATION FUND

**Section 1.** The Chicago Painters and Decorators Joint Cooperation Trust was established June 1, 1991. The purpose of this Trust shall be to improve the labor-management relationships, job security and organizational effectiveness of the painting industry in such areas as the Union has or acquires geographic jurisdiction.

**Section 2.** The Trust shall be managed by a Board of four Trustees, a Trustee and an alternate to be appointed by the Union and a Trustee and an alternate to be appointed by the Association. The Trust shall incorporate audit and impasse procedures in compliance with LMRA §302.

**Section 3.** The Employer shall contribute to this Trust the sum of one cent (14) for each hour worked by an Employee or any other person whose work is subject to this Agreement. These payments shall be made for the period June 1, 2003 through May 31, 2008 only, unless the Association, in its discretion, elects to continue such funding -- at the same or lower rate -- for

**Section 16.**    All disputes or controversies arising from this policy and program shall be subject to the grievance procedure of the Collective Bargaining Agreement contained in Article XVI, Joint Trade Board.

**Section 17.**    All employees covered by this program will be required to sign an acknowledgement of receipt of this written program and are subject to retesting upon expiration of the two year drug-free card program.

**Section 18.**    Any employee found to be utilizing a fraudulent drug-free card, or misrepresenting the status of his drug-free card will be subject to disciplinary action.

**Section 19.**    If an Owner or General Contractor requires as a condition of biding a drug policy which is different than the above for all trades performing work on its premises, the Employer may request the Union, in its sole discretion, to permit the Employer's Employees to submit to such testing program if it is likely that no Employer would otherwise be able to secure such work.

## ARTICLE XXIV

## DURATION OF AGREEMENT

This Agreement shall remain in full force and effect from June 1, 2003 through May 31, 2008, and shall continue thereafter unless there has been given not less than sixty (60) days' nor more than ninety (90) days' written notice by registered or certified mail, by either party hereto, of the desire to modify and amend this Agreement through negotiations.  Failure to give notice of a desire to modify and amend this Agreement shall result in year to year automatic renewals of this Agreement, and failure to give the required notice of a desire to negotiate independently of the Association will mean that the Employer and the Union are to be bound by the area-wide contract negotiated by the Union and the Association during the life of any such newly negotiated contract, together with an amendments thereto.

IN WITNESS WHEREOF the parties set their hands and seals this 24th day of April, 2003.

For:                                                    For:
PAINTING AND DECORATING                                 DISTRICT COUNCIL NO. 14
PAINTERS CONTRACTORS
ASSOCIATION, CHICAGO COUNCIL

_____                         _____
Keith Farnham, Its President                            Gerald C. Harms, Its Secretary-Treasurer

_____
Miles W. Beatty, III, Its Secretary

JUDGE MORAN
MAGISTRATE JUDGE KEYS
EDA

# Exhibit 3

PAINTING AND DECORATING CONTRACTORS' ASSOCIATION
PAINTERS DISTRICT COUNCIL NO. 14
JOINT TRADE BOARD

| | | |
|---|---|---|
| In the Matter of: | ) | |
| Destiny Decorators, Inc. | ) | |
| | ) | |
| Respondent. | ) | |
| and | ) | 07 C 03 |
| | ) | |
| Painters' District Council No. 14, | ) | |
| | ) | |

## NOTICE OF HEARING

To:    Destiny Decorators, Inc., c/o its president
Daniel McDuffie
723 West 129th Place
Chicago, IL 60628
Via First Class, and Certified Mail.

PLEASE TAKE NOTICE that the Painters' District Council No. 14 (the "Union") has requested that the Joint Trade Board, established pursuant to Article XVI of the Collective Bargaining Agreement between the respondent and the Union, be convened to hear a dispute between Destiny Decorators, Inc. and the Union concerning the following provisions of the Collective Bargaining Agreement:

| Article, Section | Description |
|---|---|
| V, 1,2 | improper payment of wages to Charles Jackson, David Johnson, and Herman Rogers) |

and all other provisions of the Collective Bargaining Agreement as they may apply.

The Joint Trade Board will convene on January __16__, 2008 at 1101 Taft Avenue, Berkeley, Illinois to hear and resolve the dispute at __9:30__ a.m., or as soon thereafter as the dispute may be heard.

You and the Union are entitled to appear at the hearing. You may be accompanied by counsel, as may the Union. The parties may present evidence (either through testimony or through exhibit). The Board does not apply formal rules of evidence, but the Board may restrict the presentation to such matters that the Board believes are relevant material to this dispute.

You may remain in the hearing room throughout the presentation of the evidence, and you will be allowed to question witnesses within limits set by the Board. The Board itself may also question witnesses or even call its own witnesses.

Mr. Daniel McDuffie
December 21, 2007
Page 2

Following the presentation of the evidence, you will be permitted to present to the Board any argument you believe will be helpful to the Board in reaching its decision. If you wish to present your argument in written form, it must be prepared in advance and may be presented to the Board immediately after the presentation of the evidence.

After you and the Union have presented evidence relating to the case, both you and the complaining witnesses involved will be requested to leave the hearing room. The Board will thereafter make its decision, which will be prepared and forwarded to both parties by first class and certified mail.

The decision of the Joint Trade Board is final and binding upon the parties, pursuant to Article XVI of the Collective Bargaining Agreement. You are encouraged to attend the hearing. You should clearly understand that if you do not appear and present your case, the Board will reach its decision based upon whatever evidence is presented to it at the time of the hearing, and its decision will be just as binding on you as if you attended the hearing.

Painters' District Council No. 14
By:    One of its attorneys,
Anthony B. Sanders

cc:    Frank Avila, Esq.
Avila & Tomic, LLC
227 West Monroe Street, 20th floor
Chicago, IL 60606

## CERTIFICATE OF SERVICE

The undersigned, a non-attorney on oath, depose and state that I cause to be served the Attached Notice of Hearing, by mailing a copy to:

Destiny Decorators, Inc., c/o its president
Daniel McDuffie
723 West 129th Place
Chicago, IL 60628

Frank Avila, Esq.
Avila &Tomic, LLC
227 West Monroe Street, 20th floor
Chicago, IL 60606

by placing the same in an envelope, properly addressed, with postage prepaid via first class and certified mail, this 21st day of December, 2007.

_Sarah Radtke_
Sarah Radtke

Subscribed and sworn to before me this
21st day of December, 2007.

_Dawn M De Witt_
Notary Public

OFFICIAL SEAL
DAWN M DE WITT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/11/11

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Destiny Decorators, Inc.
c/o Daniel McDuffie
723 W. 129th Pl.
Chicago, IL. 60628

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Leslie Johnson_  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  Leslie Johnson   C. Date of Delivery  22 Dec 07

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail     ☐ Express Mail
   ☐ Registered         ☒ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)   7007 2680 0000 7068 3963

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Frank Avila, Esq.
Avila + Tomic, LLC
227 W. Monroe, 20th Fl.
Chicago, IL. 60606

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  Elise Flores   C. Date of Delivery  12-24-07

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail     ☐ Express Mail
   ☐ Registered         ☒ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)   7007 2680 0000 7068 4465

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

LAW OFFICES
ARNOLD AND KADJAN
19 W. JACKSON BLVD.
CHICAGO, ILL  60604

5055- 22

JRA 12/21

UNITED STATES POSTAL SERVICE

CHICAGO IL 606

26 DEC 2007 PM 8 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

LAW OFFICES
ARNOLD AND KADJAN
19 W. JACKSON BLVD.
CHICAGO, ILL  60604

5055-22

JRA 12/21

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

O F F I C I A L   U S E

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

JRA 12/21
Postmark Here
5055-22

Sent To Destiny Decorators Dan McDuffie
Street, Apt. No.; or PO Box No. 723 W 129th Pl
City, State, ZIP+4 Chicago, IL 60028

PS Form 3800, August 2006    See Reverse for Instructions

7007 2680 0000 7068 3963

---

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

O F F I C I A L   U S E

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

JRA 12/21
Postmark Here
5055-22

Sent To FRANK Avila
Street, Apt. No.; or PO Box No. 227 W Monroe
City, State, ZIP+4 Chicago IL 60606

PS Form 3800, August 2006    See Reverse for Instructions

7007 2680 0000 7068 4465

08CV4984
JUDGE MORAN
MAGISTRATE JUDGE KEYS
EDA

Exhibit 4

EKRUTH & USBORNE LTD.   Fax:630-850-9015   May 21 2008 03:44pm   P002/017

# PAINTING & DECORATING CONTRACTORS' ASSOCIATION
## PAINTERS' DISTRICT COUNCIL NO. 14
### JOINT TRADE BOARD

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| Destiny Decorators, Inc. | ) |
| | )   07 C 03 |
| | ) |
| and | ) |
| | ) |
| Painters' District Council | ) |
| No. 14, | ) |

## NOTICE OF DECISION AND AWARD

**To:**   **Destiny Decorators, Inc., c/o its president**
Daniel McDuffie
723 West 129th Place
Chicago, IL 60628
Fax (773) 995-1592
Via Certified Mail RRR, Fax and First Class Mail

**PLEASE TAKE NOTICE** that on January 16, 2008, pursuant to proper Notice, the Joint Trade Board (the "Board") convened for a hearing. At the request of the Respondent, the Board continued the hearing until January 30, 2008, to allow for a Certified Court Reported to make a transcript of the hearing. Following the taking of testimony from several witnesses on January 30, 2008, the Board continued the hearing again for the taking of additional testimony from additional witnesses until February 20, 2008. At the close of the hearing on February 20, 2008, the parties agreed to a briefing schedule requiring any and all briefs to be submitted to the Board within fourteen (14) days after the delivery of the transcript of the February 20, 2008 hearing. Said transcript having been delivered to both the Union's and the Contractor's Counsel on March 11, 2008, briefs were due and filed on March 26, 2008. On April 8, 2008, the Board met to discuss the case, the testimony, exhibits and Briefs of Counsel regarding the case and agreed upon a Decision and Award, a copy of which was reduced to writing by the Contractors' Counsel for the Board and submitted to the Board for review and approval. A copy of the Board's Decision and Award is attached.

EKROTH & OSBORNE LTD.    Fax:630-850-9015    May 21 2008 03:44pm    P003/017

The Decision and Award is final and binding on all parties. You or your counsel are invited to contact the Union's attorneys, ARNOLD & KADJAN, 19 W. Jackson Blvd., Suite 300, Chicago, IL 60604 (312-236-0415) in order to make arrangements to comply with this Decision and Award.

Rodney W. Osborne
Counsel for the PDCA/FCAC
Ekroth & Osborne, Ltd.
15 Salt Creek Lane, Ste., 122
Hinsdale, IL 60521
Fax (630) 850-9015

MAY 2 1 2008

cc:    Frank Avila, Esq.
       Avila & Tomic, LLC
       227 West Monroe Street, 20th Floor
       Chicago, IL 60606
       Fax (312) 762-5929
       Via Certified Mail RRR and Fax

## PAINTING & DECORATING CONTRACTORS ASSOCIATION
## PAINTERS DISTRICT COUNCIL NO. 14
## JOINT TRADE BOARD

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| Destiny Decorators, Inc. | ) |
| | )   07 C 03 |
| and | ) |
| | ) |
| Painters' District Council | ) |
| No. 14, | ) |

### DECISION AND AWARD

On December 21, 2007, the Painters' District Council No. 14 (the Union") sent a notice of hearing to the Employer, Destiny Decorating, Inc., c/o its president, Daniel McDuffie, ("Destiny") via facsimile transmission, first class, and certified mail, for a hearing on January 16, 2008, to be held at 1100 Taft Avenue, Berkeley, IL, at the hour of 9:30 a.m., or as soon thereafter as the dispute could be heard. The case was called at the appointed time and place with the Union and counsel for Destiny present. Counsel for Destiny requested that the proceedings be recorded by a certified court reporter. Even though no prior written request for same had been submitted, Destiny and the Union agreed to continue the hearing to arrange for a certified court reporter until January 30, 2008, at 9:30 a.m., at 19 West Jackson Blvd., Chicago, IL. The continued case was called at that appointed time and place before Virginia Ann Murphy, CSR No. 84-1083. A transcript of the January 30, 2008 proceedings consisting of 218 pages is part of the record of the proceedings.

The continued hearing in this case was before the following Joint Trade Board representatives duly appointed pursuant to Article XVI of the Collective Bargaining Agreement between the Union and the Painting and Decorating Contractors Association, Chicago Council ("PDCA, Chicago") effective June 1, 2003, through May 31, 2008 ("Collective Bargaining Agreement"):

| EMPLOYER | UNION |
|---|---|
| Richard Ascher, Chairman | Andrew Perch, Secretary |
| Norbert Soltysiak | Hugo Lopinto |

Testimony was taken from Benjamin Vargas, Howard Levinson, Michelle Ringold and Herman Rogers; and Exhibits 1A through 14 were marked for identification. Given the late hour, the parties mutually agreed to adjourn the hearing following the testimony of these witnesses and the presentation of these Exhibits to February 20, 2008, at 9:30 a.m., at 1101 Taft Street, Berkeley, Illinois. The continued case was called at that appointed time and place before Deborah Janicek, CSR No. 084-003352, of Bevil Reporting. A transcript of the February 20, 2008 proceedings consisting of 308 pages and additional Exhibits is also part of the record of the proceedings.

The hearing was reconvened at 9:50 a.m. on February 20, 2008, at 1101 Taft Street, Berkeley, Illinois. Testimony was taken from John Spiros, Jr., Charles Jackson, David Russell Johnson, Ayton Taylor and Daniel McDuffie.

## THE CLAIM

The Union alleged violations of Article V, Sections 1 and 2 "and all other sections as they may apply" of the Collective Bargaining Agreement. Destiny Decorating, Inc., is signatory to the Collective Bargaining Agreement with the Union. The Collective Bargaining Agreement as between Destiny Decorating, Inc., and the Union remains in full force and effect. Article V, Section 1 of the Collective Bargaining Agreement sets the hourly wage rate for "journeyman" painters. Article V, Section 2 of the Collective Bargaining Agreement establishes the "Premium Pay" sometimes referred to as "overtime pay" for work performed outside the normal work hours (generally 8:00 a.m. to 4:30 p.m., Monday through Friday except for legal holidays specified in Sections 2 and 4 of Article IV and certain "Industrial Work" described in Section 3 of Article V).

## THE EVIDENCE PRESENTED

Three individuals: Herman Rogers (hereinafter "Rogers"); Charles Jackson (hereinafter "Jackson"); and David Johnson (hereinafter "Johnson") each testified that he had worked for Destiny doing "painters" work covered by the Collective Bargaining Agreement. Each of them testified in some detail concerning when he worked, where he worked, for whom he worked and what work he performed for Destiny. Destiny, through its counsel, sought to undermine each of

these individuals testimony by noting that each of their respective oral testimonies was not supported by timely written logs or time sheets prepared by these workmen indicating the date, place, hours worked, and tasks performed. However, the Board was also presented with other evidence regarding each of these individuals, separate and apart from their oral testimonies, that tended to corroborate each of their testimonies with respect to the time periods they worked for Destiny, the amount they were paid by Destiny and the scope of the work they each performed.

In addition to the evidence presented in support of the individual claimants, the Board was also presented with evidence presented by the Union's auditors who performed an analysis of the evidence supplied by the complaining workers concerning the hours worked and the amount paid and gave a "conservative" estimate of the amount of wages owned to each claimant pursuant to the Collective Bargaining agreement. In addition, Destiny's own records some of which was made available to the Union's auditors, including cancelled checks, payroll records and checking account records showed the amount of payments made to each of the individuals involved contained in Destiny's own records. Thus, there is little, if any, question that destiny did pay these three men for doing something. What really is disputed is whether all of any of the men performed "painters" work for Destiny, and if so how much.

### Evidence Presented Regarding Herman Rodgers

Rogers testified that he worked for Destiny from April until September, 2006, and that during that time he performed painting work, including working with a sprayer, a brush and rolling work, taping window frames and base work; that he regularly worked more than 40 hours per week, usually 10 hours per day, and often on Saturdays also for which he was not compensated at all which he described as "Sacrifice Saturdays". He further testified that he was paid in cash the first three weeks and then was paid by check. He also kept an informal small note book where he detailed the locations where he worked each day and what sort of work he did. These locations included the Christian Industrial League at Rosevelt and California and 105th and Michigan and 38th and Ellis. He acknowledged that he started keeping the notebook after he realized that Destiny was not in fact paying him correctly and that he stopped recording in his "Diary" his last day of work. In addition, the Union also produced records of Roger's prior history as a painter with three other contractors, to wit: CQS Construction, Inc., in

December 2003; Sellegren Brothers, Inc. In February, 2004; and Lankford Construction Co. From April to August, 2006; and even after his employment with Destiny, with DMG World Media, for a short time November, 2006.

The Union also produced one of its Business Agents, John Spiros, who testified that during the summer of 2006, Rogers approached him at a meeting of Local 147 of the IUPAT and complained to Spiros that he was having difficulty with initially an unnamed employer but subsequently acknowledged that the employer was Destiny, who had promised to issue but had not issued to him a letter to attend the Apprenticeship school. After identifying to Mr. Spiros, that the employer was Destiny, Mr. Spiros referred Rogers to Union Counsel for assistance.

Also with respect to Rogers, Destiny's own records independently support Rogers claim that he worked for Destiny for at least 18 of the 20 weeks Rogers claims to have worked for Destiny. These records further tend to corroborate Rogers oral testimony that he was paid $10/hour or less but was often "Docked" for some of the hours worked for what Rogers testified Destiny claimed was poor painting work. In addition, Rogers testified that he repeatedly asked Destiny for months for a letter to allow him to attend the DC-14 Apprenticeship School. He had attended this school previously in 2004, but was laid off by his then employer and could not find another Employer to support his apprenticeship. Finally, after several months, Destiny gave him a letter to the DC-30 Apprenticeship school even though Rogers had only worked in the DC-14 area. Rogers attended the DC-30 school for only one day, but after that Destiny immediately laid him off and he could not attend the school without being employed by a union painting contractor. DC-30's apprenticeship records corroborate Rogers' testimony regarding the letter and his attendance for one day as well. Destiny's President, Daniel McDuffie, admitted during his testimony that Rogers worked for him, but not on union jobs and not as a painter. This testimony by Mr. McDuffie was made despite the fact that Destiny is signatory to the Collective Bargaining Agreement which makes all jobs on which Destiny performs painting work in Cook, Lake, Will and Grundy Counties, union jobs, and in spite of the fact that Destiny sent a letter in support of sending Rogers to the DC-30 Apprenticeship school. Moreover, McDuffie also stated that he paid Rogers "by the Job" not by the hour, and that he took out no federal or state income taxes or social security or Medicare taxes and used no timesheets for Rogers, all in violation of state and federal tax laws.

Destiny by and through its President produced only its own records and claimed that Rogers agreed to work as a laborer for less than $10.00 per hour.

## Evidence Presented Regarding Charles Jackson

Charles Jackson testified that he had worked as a painter and as a member of the Union for many years. His Union employers included Continental Painting, Stain Pant and Decorating, J B Construction and National Decorating, in addition to Destiny over the last 10 years or so. Prior to coming to work for Destiny, he had worked outside the trade for a short period and was attempting to get back into the Union by working with Destiny. He began working for Destiny in late February, 2007 when he worked a couple of days and began working full time for Destiny in March, 2007 and continued working for Destiny with only a few days off, through August 17, 2007. Jackson testified that for all but the last two weeks he worked for Destiny and was paid in cash at the rate of $150/day. Destiny finally issued to him a letter to join the Union in early August, 2007, after which he worked for only two additional weeks at Union scale before being laid off by Destiny. Prior to the 2 week period of full scale pay in August, 2007, he was always paid in Cash at the rate of $150 per day even if he worked many more hours including at least one day when he worked for 16 hours.

Mr. McDuffie testified that Jackson only worked for Destiny for the two weeks he paid him Union Scale in August 2007. Jackson had previously testified during his direct examination and prior to Mr. McDuffie's testimony, that he was always paid in cash which was delivered to him in an envelope by another Destiny employee. Mr. Jackson produced 9 of these envelops, with his name written on the envelope, and all but one of the envelopes bearing Destiny's printed return address, and three with "750" and one with "150" written on the inside flap of the envelope which number could have represented 5 days at $150/day and one day at $150/day. McDuffie likewise denied that these envelopes were used for cash payments and did not know how they had come into the possession of Mr. Jackson.

Mr. Spiros testified that he had been one Destiny job at the Robert Taylor Homes project at the end of July or early August, 2007, where he remembered seeing Jackson and David Johnson working for Destiny.

## Evidence Presented Regarding David Johnson

David Johnson's grievance is perhaps the most simple. It is clear from both Mr. Johnson's testimony and Destiny's records that Mr. Johnson was on Destiny's payroll. The issue is one of classification. Was he to be paid as a journeyman or as an apprentice. Destiny says he was an apprentice, the Union says no because he was not enrolled in the Union's JATC Apprenticeship School and if not enrolled, he was not an apprentice. At the hearing, Destiny did not argue that Johnson had actually enrolled or ever attended the JATC School. Instead, it argued that Johnson was a so called "Section 3" apprentice through a City of Chicago Program. Destiny hired Johnson pursuant to a letter from Harry McGraw of Kennedy-King College's Dawson Technical Institute where Johnson had been attending class, to Larry Thomas, a Union business agent, which letter stated that "Johnson has been hired by Destiny Decorator's, Inc. to be a 1st year apprentice painter." Moreover, Destiny issued a "Letter of Intent" to Johnson dated April 3, 2007 that stated "As a requirement of the painters union, in order to obtain the above position mentioned. You are required to register and complete the apprenticeship program." This letter also states that "If you meet the requirements of Destiny Decorators you will be able to start working on April 3, 2007." This April 3, 2007, is not exactly how the apprenticeship enrollment is done. The employer has to send a letter Of Intent to the Apprenticeship school first, not later. Then, the employee must register as an apprentice at the apprenticeship school. Until the employee is registered, he is not an apprentice. Under Article XIII, Section 5(a) and Section 9 of the CBA, a painter is only an apprentice if the painter is enrolled and attending class at the JATC. If the painter is not so enrolled, he must be paid at least at Journeyman scale.

Destiny claimed that the CBA gives the contractor a 90 day trial period. That is only true if the painter enrolls in the apprenticeship school with the required Letter of Intent to hire and allows the painter to go to class one day a week. That is how the CBA is written and how it has always been interpreted.

**Evidence Related to**

**"All Other Sections as They May Apply" of the Collective Bargaining Agreement**

In addition to the main issue presented to the Joint Trade Board concerning the payment of wages to the three individuals, Rogers, Jackson and Johnson, certain other provisions of the Collective Bargaining Agreement are also raised by the evidence presented. In most of the Joint Trade Board cases over the last few years, the Board has often been presented with evidence that the respondent contractor failed to:

1.  File Job Reports. Report one or more jobs to the Union pursuant to ARTICLE XII, Section 4 of the CBA;

2.  File Hiring Cards. "All Employers shall, prior to the completion of the first pay period, but no later than seventy-two (72) hours after a new employee is hired, submit a list of all new employees to the Union, in writing upon a form provided by the Union," pursuant to ARTICLE III, Section 5(b);

3.  Furnish Time Sheets. "Each Employer shall be required to obtain and maintain for a period of Seven (7) years weekly time sheets completed, signed and dated by each covered employee for all hours worked." ARTICLE X, Section 4.

4.  Subcontracting to Employees. Any Employer who subcontracts any work covered by this agreement will notify the Union of the subcontractor before such work is begun. Employer agrees that he will not sublet work to any Employee. ARTICLE XI, Section 1.

No evidence was presented by either party to these proceedings regarding the Employer's filing or failure to file Job Reports or Hiring Cards. There is considerable evidence that the Employer failed to produce time sheets for any of Herman Rogers' employment and for all but two weeks of Charles Jackson's employment. Time sheets were supplied for most of David Johnson's time, but only after members of Board requested them. The Union's auditors had previously requested them, but Destiny failed to furnish them to the auditors.

## ISSUES PRESENTED

### Jurisdiction

The Joint Trade Board has jurisdiction over these claims because Destiny Decorators, Inc., signed a memorandum of agreement binding it to the collective bargaining agreement between the Painting and Decorating Contractors Association, Chicago Council (the "Association") and the Union on September 4, 2002, a copy of which was entered into the record as Exhibit 2. Article XVI, Section 2(a) of the Collective Bargaining Agreement provides the Joint Trade Board with jurisdiction over "all disputes and matters of controversy arising under the provisions" of the CBA.

Article V of the Collective Bargaining Agreement provides for the proper rates for wages to be paid to persons whose employment is governed by the CBA. Article XII, Section 1 of the CBA likewise provides that in the event wages are not properly so paid within four days after the end of a payroll period, "the Employee shall be paid double time for all waiting time until payment of the wages is made in full, and the Employer shall pay all necessary expenses for collecting wages that are due".

## FINDINGS AND CONCLUSIONS

Following considerable discussion, the Board by appropriate motion duly made, seconded, and passed unanimously, and based upon the evidence presented to it at the hearing in this matter, finds and concludes as follows:

1.    (a)    Destiny Decorators, Inc. ("Destiny") is a signatory contractor to the Collective Bargaining Agreement with the Union. Destiny has taken no action to terminate such Agreement and accordingly, is bound to the terms and conditions of employment set forth in the Collective Bargaining Agreement between the Employer Association and the Union, dated June 1, 1997, as extended through May 31, 2004, as extended through May 31, 2008.

(b)    Article XVI of the Agreement gives the Board jurisdiction over the parties' current dispute.

( c )    This case is properly before the Board for disposition.

2.    (a)    Article V, Sections 1 and 2 requires signatory employers to pay wages at the contract rate for journeymen.

(b)    The contract wage rate for journeymen in effect during June 1, 2006 through May 31, 2007 was $34.40, per hour and from June 1, 2007 through May 31, 2008 was $35.40 per hour.

( c )    The time and one half rate for journeymen in effect during November and December, 2007 is $53.10 per hour.

(d)    The computation of a double time rate during the period from November 2007 through December, 2007 is $70.80.

3.    Herman Rogers, Charles Jackson and David Johnson performed covered work for Destiny Decorators, Inc. during the various periods as set forth below:

a. Herman Rogers during the period from April 29, 2006, through September 8, 2006;

b.    Charles Jackson, during the period from February. 2007, through August 17, 2007;

c.    David Johnson, during the period from April 2, 2007 through July 17, 2007:

EKROTH & OSBORNE LTD.  Fax:630-850-9015    May 21 2008 03:46pm  P013/017

4.    Based upon the information prepared by the Union's Auditors, Howard Levinson and Benjamin Vargas, from information obtained by the Union's Auditors from Destiny's available records and the sworn affidavits of the complainants themselves the amount claimed due to the claimants, is as follows:

  a.    Herman Rogers - $15,401.96;

  b.    Charles Jackson - $13,765.20; and

  c.    David Johnson -  $ 7,313.44

         for a total of $ 36,480.60  in unpaid wages.

5.    Destiny Decorators, Inc. disputes that it owes the wages referenced in paragraph 4 to the individuals listed therein.

6.    The evidence supports a finding that by failing to pay the three individuals the amounts listed in paragraph 4, Destiny Decorators, Inc has committed at least three (3) separate violations of the Agreement.

7.    a.    **Herman Rogers,** should have been paid on or before September 8, 2006, the last day he worked, and was not.  As of March 26, 2008, the date of last day of the hearing in this matter, 564 days had elapsed;

    b.    **Charles Jackson,** should have been paid on Aug 17, 2007 and was not. As of March 26, 2008, the date of last day of the hearing, 222 days had elapsed;

    c.    **David Johnson,** should have been paid on  July 17, 2007, the last day he worked, and was not.  As of March 26, 2008, the date of last day of the hearing, 253 days had elapsed.

8.    Article XII, Section 1 of the Agreement provides that in the event an Employer does not pay wages when they become due, the employer may be charged double time for

EKROTH & OSBORNE LTD.   Fax:630-850-9015        May 21 2008 03:46pm   P014/017

waiting time to be paid to the affected employee(s) for each hour from the date the employee should have been paid to the date that he or she actually receives the wages.

## AWARD

The Joint Trade Board, pursuant to the powers granted to it by Article XVI, Section 2 of the parties' agreement has the power to enter an award. After considering all of the evidence presented, the Board believes that the claimants' statements regarding the amounts due to them, while credible, and more believable than those of Destiny, do not necessarily require that this board award any or all of the claimants the full amount of the wages each of them has claimed. Each of the claimants did not immediately bring to the attention of the Union the disparity in their pay upon discovering that they were paid improperly, but instead each waited until at least a number of weeks of employment had passed. This behavior demonstrates that they, at least initially, acquiesced in Destiny's violation of the wage provisions of the contract. However, because they were indeed paid improperly, the Board concludes that they are owed at least some wages and feel that an award for two weeks of their wages at the proper rates less the amount already paid for such two weeks is a fair award provided that Destiny pays the amount promptly. This represents the amount of time after which they would have had sufficient knowledge to know they were paid improperly and thus should have complained to the Union. Further, the Board finds that Destiny violated other provisions of the contract. The Board therefore enters the following award.

1.    **For the violation of Article V, Section 1**, the employer shall pay wages to the employees listed below in the following amounts:

a.    **Herman Rogers,**    7 days @ $208.40/day or $ 1,458.80 and
3 days @ $188.40/day or $   562.20
For a total of              **$ 2,024.00**

b     **Charles Jackson,**    10 days @ $125.20/day or **$ 1,252.00**

c.    **David Johnson,**    5 days @ $170.40/day or $   852.00 and
5 days @ $165.12/day or $   825.60
For a total of              **$ 1,677.60**

EKROTH & OSBORNE LTD.    Fax:630-850-9015    May 21 2008 03:46pm P015/017

2.     The payment of these amounts must be made by the employer. From these gross wages, the employer must make all payroll deductions as required by law and the Agreement, including but not limited to state and federal withholding, social security, medicare, savings fund contributions, and dues checkoff. The payment of these amounts must be delivered to the Painters' District Council No. 14, c/o their attorneys, Arnold and Kadjan, 19 West Jackson Blvd., Chicago, Illinois 60604 on or before June 30, 2008.

3.     For the violation of failure to timely pay wages owed under Article V, Section 1, the Board may invoke the remedy as described by Article XII, Section 1. Under this provision, the Board may award additional amounts to each Employee up to double time for each hour of waiting time, or the Board may, under ARTICLE XVI, Section 2(c), award "of actual damages, plus fines, and assess liquidated damages which shall include interest, costs, attorneys' fees, administrative expenses, auditing or accountants' fees, research, investigation, and stenographic expenses in the event of a transcript in obtaining or enforcing the award." In exercise of these powers, the Board fines Destiny Decorators, Inc. in the amount of $5,000 with respect to each of the three (3) employees of Destiny for whom less than journeyman wages were paid for a total fine, in addition to the requirement to pay the amounts specified above in paragraph 1, of $15,000. If the amounts of the wages due as described in paragraph 1 above are paid on time, as described above, on or before June 30, 2008, then this penalty shall be limited to a fine of One Thousand and no/100 Dollars ($1,000.00) per such employee for a total of Three Thousand and no/100 Dollars ($3,000.00) payable to the Painters' Joint Cooperation Trust Fund.

4.     In the event that the employer fails to pay the amounts referred to in paragraphs 1 and 3, above, on or before June 30, 2008, the Board will impose the full remedial provisions of Article XII, Section 1, and award the three employees in addition to the amounts described in paragraph 1 of this Award ,double time for waiting time for each hour from the date that the amounts were owed, until the date that the employees should be paid through the last date of the hearing, March 26, 2008, provided that such amount shall be limited to an amount not to exceed $10,000.00 per man.

ERKUTH & OSBORNE LTD.   Fax:630-850-9075        May 21 2008 03:46pm  P016/017

5.    For the violation of failure to report one or more jobs to the Union pursuant to ARTICLE XII, Section 4 of the CBA, the Board finds no violation, as no evidence was submitted by the Union or otherwise in the record in support of this potential violation.

6.    For the violation of failure to file hiring cards pursuant to ARTICLE III, Section 5(b) of the CBA, the Board likewise finds no violation, as no evidence was submitted by the Union or otherwise in the record to support this potential violation. See Transcript of May 26, 2008 at pg. 300.

7.    For the violation of failure to furnish time sheets for each employee pursuant to ARTICLE X, Section 4 of the CBA, the Board finds ample evidence to support multiple violations by the Employer with respect to Herman Rogers and Charles Jackson. For these violations the Board imposes a fine of $200.00 for each employee or a total of $400.00 payable to the Painters' Joint Cooperation Trust Fund.

8.    For the violation of Subcontracting work to Employees in violation of ARTICLE XI, Section 1, the Board finds that the Employer either violated the provisions of this Section by subcontracting work to Herman Rogers for which he may or may not have been furnished an IRS Form 1099-MISC, or a W-2 form; or if he was furnished with a W-2 he was quite clearly an employee of the corporation known as Destiny Decorators, Inc., as evidenced by the checks issued to him and he violated ARTICLE V, Section 1(a) by not paying Rogers per hour worked. The latter alternative finding is based on Destiny's assertion at the hearing that Rogers was paid by the job, not by the hour .. In other words, Rogers was performing painting work for an Employer signatory to the CBA and paying him in violation of ARTICLE V, Section 1(a) through payment by the job, or Destiny was subcontracting work to an individual who was, immediately before subcontracting work to him, such an employee, in violation of ARTICLE XI, Section 1. For violating the provisions of either ARTICLE V, Section 1(a) or

ARTICLE XI, Section 1, the Board imposes a fine of $5,000.00, payable to the Painters Joint Cooperation Trust Fund.

In accordance with Article XVI, Section 2 (c) of the parties collective bargaining agreement, the employer is required to pay all attorneys' fees and costs incurred in prosecuting this proceeding, including any proceedings to enforce this Award.

9.    For each amount of fines or wages specified above where the amount is less if paid on or before June 30, 2008, Destiny must pay all amounts due in fines and wages on or before June 30, 2008 in order to be relieved from paying the higher amounts due if paid after June 30, 2008.  In summary, the fines and wages due on or before June 30, 2008 come to $2,024.00 in gross wages payable to Herman Rogers, $1,252.00 in gross wages payable to Charles Jackson, $1,677.60 in gross wages payable to David Johnson, $3,000.00 in fines for underpayment of wages, $400.00 in fines for failure to furnish time sheets, and $5,000.00 for the alternative findings of subcontracting to an employee or payment by the job instead of by the hour.  If all of the amounts stated in the previous sentence are not paid by on or June 30, 2008, the fines and wages due come to $10,000.00 in gross wages payable to Herman Rogers, $10,000.00 in gross wages payable to Charles Jackson, $10,000.00 in gross wages payable to David Johnson, $15,000 in fines for underpayment of wages, $400.00 in fines for failure to furnish time sheets, and $5,000.00 for the alternative findings of subcontracting to an employee or payment by the job instead of by the hour.

10.    This Decision and Award is final and binding on all parties.

11.    The Board directed that a copy of this Decision and Award be mailed to the employer and to the Union via first class and certified mail.

**JOINT TRADE BOARD**

_____
Richard Ascher, Chairman
Dated: May _15_, 2008

_____
Andrew Perch, Secretary
Dated: May _15_, 2008.

Exhibit 5

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**O F F I C I A L   U S E**

CHICAGO IL 60628

| | | |
|---|---|---|
| Postage | $ 0.93 | 0523 |
| Certified Fee | 2.70 | 09   Postmark Here |
| Return Reciept Fee (Endorsement Required) | 2 30 | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ 5.93 | 05/21/2008 |

Sent To *Daniel McDuffie Sne:*
*Densbury Nicholasbon*
Street, Apt. No.; or PO Box No. *223 W 129th Place*
City, State, ZIP+4 *Chicago IL 60628*

7004 0750 0002 4724 4079

PS Form 3800, June 2002                    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**O F F I C I A L   U S E**

CHICAGO IL 60606

| | | |
|---|---|---|
| Postage | $ .93 | 0523 |
| Certified Fee | 2.70 | 09   Postmark Here |
| Return Reciept Fee (Endorsement Required) | 2 30 | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ 5.93 | 05/21/2008 |

Sent To *Fisk Kirber*
*Kirber & Tonic LLC*
Street, Apt. No.; or PO Box No. *227 West Monroe 20th Fl.*
City, State, ZIP+4 *Chicago IL 60606*

7004 0750 0002 4724 4093

PS Form 3800, June 2002                    See Reverse for Instructions

EKROTH & OSBORNE LTD.   Fax:630-850-9015    Jul 22 2008 02:37pm  P003/004

UNITED STATES POSTAL SERVICE   CHICAGO IL 606

28 MAY 2008 PM 1

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**• Sender: Please print your name, address, and ZIP+4 in this box •**

### EKROTH & OSBORNE, LTD.
### 15 Salt Creek Lane, Suite 122
### Hinsdale, IL   60521-2926

*120* (JTB)

---

UNITED STATES POSTAL SERVICE   CHICAGO IL 606

28 MAY 2008 PM 1

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**• Sender: Please print your name, address, and ZIP+4 in this box •**

### EKROTH & OSBORNE, LTD.
### 15 Salt Creek Lane, Suite 122
### Hinsdale, IL   60521-2926

*120* (JTB)

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Daniel McDuffie
Century Decorators Inc.
723 West 129th Place
Chicago, IL
60628

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery
23 May 08

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)    7004 0750 0002 4724 4079

PS Form 3811, February 2004       Domestic Return Receipt     102595-02-M-1

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Frank Avila Esq.
Avila & Tomus, LLC
227 West Monroe, 20th Floor
Chicago, IL 60606

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X C. Heath    ☐ Agent
☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery
C. Heath                       5/28/08

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)

PS Form 3811, February 2004       Domestic Return Receipt     102595-02-M-1